A95A2776. WALKER v. THE STATE.
(467 SE2d 388)

ANDREWS, Judge.

Dejuan Jermain Walker appeals his conviction on a jury verdict finding him guilty of armed robbery. Walker contends the trial court erred in allowing an investigator to give hearsay testimony from a relative of the co-defendants in the case and also in allowing into evidence a pre-trial photographic lineup identification of Walker. We disagree and affirm.

The evidence at trial was that, on the evening of January 9, 1995, Walker and co-defendants Foley and Braezle spent the night at the house of Carol Foley, the mother of defendant Foley and the common law wife of defendant Braezle. Around 1:00 the next afternoon, Foley and Walker went to the J. Loan Company in Riverdale. At approximately the same time, Braezle parked his pickup truck at an apartment complex across from the J. Loan Company. Foley and Walker went into the shop and Walker asked Jack Watson, the owner of the shop, to show him a gold chain which was hanging behind the counter. Watson testified that he had seen Walker in the pawn shop on several occasions, but did not know him by name. As Watson turned to reach for the chain, Foley pulled a gun and told him to raise his hands. Foley gave the gun to Walker who told Watson to go into the back of the shop. Afraid that Walker would kill him, Watson refused and Walker then told him to lie on the floor. Foley took jewelry

and guns from the case and put them in a canvas bag. As soon as Walker and Foley left, Watson got up, grabbed two loaded guns from behind the counter and ran outside. He saw the two men running on the other side of the street and fired at Foley, hitting him in the leg. Watson called 911 and then went over to Foley and stayed with him until police arrived. Braezle, who had been parked across the street with the hood of his truck open, heard the shots and left.

Later, Ronald Beddingfield, the investigator assigned to the case, showed Watson a photographic lineup from which Watson positively identified Walker as one of the men who had robbed him. On January 13, 1995, Walker was arrested by detectives on a detail called "Operation Clean Sweep" in the Techwood Homes area. When arrested, Walker was carrying a .357 caliber revolver which matched the description given by Watson of the gun used in the robbery.

1. First, Walker claims that the trial court erred in allowing into evidence the hearsay testimony of Detective Beddingfield. During his investigation of the robbery, Beddingfield interviewed Carol Foley, the common law wife of co-defendant Braezle. Ms. Foley told Beddingfield of conversations she had with all three defendants after the robbery. She said Walker called her on January 14 and told her he had committed a robbery at the J. Loan Company.

At trial, Foley invoked the marital privilege and refused to testify against her husband. Under the necessity exception to the hearsay rule, the trial court allowed Beddingfield to testify as to Braezle's admissions to Ms. Foley. The trial court also allowed Beddingfield to testify about Ms. Foley's conversation with Walker on January 14. Walker contends that while the hearsay testimony concerning Braezle properly could be admitted, the necessity exception to the hearsay rule did not apply to hearsay statements concerning anyone other than Ms. Foley's common law husband. Therefore, Walker claims he was denied his constitutional right to confront and cross-examine Ms. Foley.

The court held a hearing on the admissibility of Beddingfield's testimony and ruled as follows: "This officer can testify that Mrs. Foley told him that Walker told her on 1/22 that he went to J. Loan Company to rob it. He can testify as to what she said about who spent the night at her house and I do find that there is a sufficient indicia of reliability to allow this statement into evidence. It's no different than if somebody is down at the jail. They are in jail for something and if they tell somebody in the jail, 'Hey, I committed the crime,' that person can come in and testify to it. These defendants told this woman certain things. She has claimed the privilege and I believe under the *Patterson* case this officer can testify as to what she told him that they had said to her."

It is undisputed that, under *Patterson v. State*, 202 Ga. App. 440

(414 SE2d 895) (1992), Beddingfield could testify about Braezle's admissions to Ms. Foley. See *Patterson*, supra at 443-444. However, *Patterson* does not apply to Ms. Foley's conversations with Foley or Walker. Neither do we find this testimony admissible under any other exception to the hearsay rule. While the record shows that counsel for all parties were concerned about the possibility of a mistrial if Ms. Foley, who was apparently a volatile and unpredictable witness, were called to testify,[1] this does not make her "unavailable" for purposes of the necessity exception. See *Glisson v. State*, 188 Ga. App. 152, 154 (372 SE2d 462) (1988) (necessity exception only applies when witness is "unavailable" to testify in person, usually because of death or invoking a privilege, not to a witness whose testimony is compellable); *Shaver v. State*, 199 Ga. App. 428 (405 SE2d 281) (1991) (no exception to hearsay rule when witness not "available" because he is incompetent). Accordingly, that portion of Beddingfield's testimony concerning Ms. Foley's conversation with Walker was hearsay, and the court erred in allowing it.

However, while we find this portion of Beddingfield's testimony to be inadmissible hearsay, we do not find a violation of the confrontation clause. "The confrontation clause guarantees the defendant in a criminal trial the general right to cross-examine the witness, that being the principal means by which the believability of a witness and the truth of his testimony are tested." *Henderson v. State*, 182 Ga. App. 513, 517 (356 SE2d 241) (1987), rev'd on other grounds, 257 Ga. 618 (362 SE2d 346) (1987). There is no violation of this Sixth Amendment right if the witness is present and available for cross-examination. *Henderson*, supra at 517.

The record shows Ms. Foley was present in the courtroom during the trial. Walker does not point to, and we do not find, anywhere in the record where counsel requested and was denied permission to call Ms. Foley as a witness for purposes of cross-examination as to her conversation with Walker on January 14. Further, at the close of evidence, the trial court specifically clarified its ruling on this issue, stating that it had never precluded either Walker or Foley from calling Ms. Foley to the stand and cross-examining her as to anything she may have told Detective Beddingfield about either of them. Therefore, from the record before us, we cannot say that Walker was denied the right to cross-examine Ms. Foley. Accordingly, since Ms. Foley was present and available during the trial to testify and Walker did not call her, he cannot now complain that he was denied his right to confront and cross-examine the witness. Thus, there was no violation

---

[1] Counsel and the trial court believed it would be difficult to prevent her from mentioning that she had invoked the marital privilege, thus creating a mistrial under the rule of *Westbrook v. State*, 162 Ga. App. 130 (290 SE2d 333) (1982).

of Walker's Sixth Amendment rights under the confrontation clause.

The inquiry then becomes whether the hearsay testimony was harmful as a matter of law. We find that it was not. "This court has recognized the general rule that in order to justify a new trial or reversal, the trial court's ruling must be both erroneous and harmful to the appellant." *Glass v. State*, 235 Ga. 17, 19 (218 SE2d 776) (1975). The test for harmful error is whether it is "highly probable" that the error contributed to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). In determining whether hearsay testimony is harmful, this court has found "[i]nadmissible hearsay which is received over objection does not require a new trial if it appears that the evidence could not have affected the verdict because other evidence by a witness with immediate and personal knowledge is sufficient to establish the fact in question." *Glass*, supra at 19. Here, there was sufficient evidence by a witness with personal knowledge from which the jury could find Walker committed the robbery without Beddingfield's testimony. As discussed above, Watson, the shop owner, positively identified Walker from a photographic lineup and also in court as one of the men who robbed him. In addition, when Walker was arrested he was carrying a gun which exactly matched the description given by Watson. Therefore, we find it is highly probable that the error did not contribute to the judgment. Accordingly, Beddingfield's hearsay testimony was harmless error and, thus, was not grounds for a new trial.

2. In his second enumeration of error, Walker contends the circumstances surrounding the victim's identification of him from a photographic lineup were unnecessarily suggestive. But, Walker does not give any specific reason for claiming the lineup was suggestive. Further, there is nothing in the record to indicate that the lineup was suggestive in any way. Therefore, since Walker does not point to, and we are unable to find, any facts in the record to support this claim, we find this enumeration of error to be without merit.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 5, 1996 — 

*David B. Brown*, for appellant.
*Robert E. Keller, District Attorney, M. Tom Woodward, Assistant District Attorney*, for appellee.